# United States District Court

____CENTRAL____ DISTRICT OF ____CALIFORNIA____

**In the Matter of the Seizure of**
(Address or Brief description of property or premises to be seized)

Up to $1,296,912.00 on deposit in Cathay Bank account 4530462

**APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT**

CASE NUMBER: 2:24-MJ-00120

**I, Fred D. Apodaca, being duly sworn depose and say:**

**I am a Special Agent with the United States Secret Service, and have reason to believe that**

**in the ____CENTRAL____ District of ____CALIFORNIA____**
**there is now concealed a certain person or property, namely** (describe the person or property to be seized)

Up to $1,296,912.00 on deposit in Cathay Bank account 4530462

**which is** (state one or more bases for seizure under United States Code)

subject to seizure and forfeiture under 18 U.S.C. §§ 981 (a)(1)(C), (b)(2), 982(b), 984 and 21 U.S.C. §§ 853(e) and 853(f)

**concerning a violation of Title** 18 **United States Code, Section(s)** 1343.

**The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:**

**Continued on the attached sheet and made a part hereof.    X Yes __ No**

    S.A. Fred D. Apodaca
**Attested to by the applicant in accordance with the Requirements of Fed. R. Crim. P. 4.1 by telephone**

**Sworn before me in accordance with requirements of Fed. R. Crim. P. 4.1 by telephone**

Los Angeles, California
**City and State**

**Date**

**Hon. Margo A. Rocconi, U.S. Magistrate Judge**
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

**AUSA Ryan Waters;ga**

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT**

I, Fred D. Apodaca, being duly sworn, hereby depose and state as follows:

**I.**

**INTRODUCTION**

1. I am a Special Agent with the United States Secret Service ("USSS") assigned to the Los Angeles Field Office Asset Forfeiture Squad. I have been employed by the USSS since December 2008. In this capacity, I am responsible for investigating violations of federal criminal law, particularly those laws found in Title 18 of the United States Code and relating to financial institution fraud, credit card fraud, identity theft, and stolen U.S. Treasury Checks. I have received formal training at the Federal Law Enforcement Training Center and the USSS James J. Rowley Training Center. My training includes, but is not limited to, various investigative techniques and tactics regarding financial crimes, including credit card fraud, identity theft, illegal methods used to obtain credit cards, bank loans, and other lines of credit, and methods used to launder and conceal the proceeds. Prior to my employment with the U.S. Secret Service, I was employed for four years as a Financial Analyst with the Federal Bureau of Investigation.

2.     Unless stated otherwise, I have personal knowledge of the matters set out in this affidavit.  To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me through reliable law enforcement sources, and I believe it to be true.

3.     The facts set forth in this affidavit are based upon my own personal observations, my training and experience, and information obtained during this investigation from other sources, including: (a) statements made or reported, directly or indirectly, by various witnesses with personal knowledge of relevant facts, including other law enforcement officers; (b) records obtained during the course of this investigation; and (c) interviews conducted by other USS special agents.

4.     This affidavit is intended to show that there is sufficient probable cause for the requested seizure warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.  All figures, times, and calculations set forth herein are approximate.

**II.**

**<u>PURPOSE OF AFFIDAVIT</u>**

5.    This affidavit is offered in support of applications for warrants to seize:

    a.    Up to $1,296,912.00 (the "Subject Funds 1") on deposit in Cathay Bank account 4530462 ("Subject Account 1"), held in the name of Hepburn Trade Incorporated;

    b.    Up to $4,814,636.00 ("Subject Funds 2") on deposit in Flagstar Bank account 1505147452 ("Subject Account 2"), held in the name of Octavia Trading Limited; and

    c.    Up to $3,508,364.00 (the "Subject Funds 3" and, together with Subject Funds 1 and 2, collectively referred to herein as the "Subject Funds") on deposit in Bank of America account 501029000195 ("Subject Account 3" and, together with Subject Accounts 1 and 2, collectively referred to herein as the "Subject Accounts"), held in the name of Sun Yang Trade LLC.

6.    Based on the facts set forth below, there is probable cause to believe that the Subject Funds represent proceeds or are involved in violations of 18 U.S.C. § 1343 (Wire Fraud), which constitutes "specified unlawful activity" pursuant to 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B). Specifically, there is probable cause to believe that the Subject Funds are proceeds of

romance scams (*i.e.*, confidence frauds[1]), and social engineering scams,[2] perpetrated against numerous victims. Therefore, the Subject Funds are subject to seizure pursuant to 18 U.S.C. § 981(b)(2) and forfeiture pursuant to 18 U.S.C. § 981 (a)(1)(c).

7. In addition, there is probable cause to believe that the Subject Funds are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(f) because the funds would, in the event of conviction on the alleged underlying offenses, be subject to forfeiture, and an order under section 21 U.S.C. § 853(e) would not be sufficient to assure the availability of the property for forfeiture.

8. To the extent that the Subject Funds are not the actual monies traceable to or involved in the illegal activities identified herein, the government alleges that these funds are identical property found in the same account as the property

---

[1] According to Blackstone's Criminal Practice, confidence frauds involve a victim transferring money and/or property as a result of being deceived or misled by the offender.

[2] Social engineering is a method used to manipulate victims into performing certain actions or providing confidential information. When successfully executed, social engineering techniques can cause a victim to send money to someone whom he or she met on a dating website or to provide confidential information such as his or her personal identifiable information and bank account information. Additionally, victims sometimes serve as money mules, individuals recruited to receive and transfer money acquired from criminal activities on behalf of criminals and money launderers.

4

traceable to or involved in the illegal activities, rendering these funds subject to forfeiture pursuant to 18 U.S.C. § 984 (forfeiture of fungible property).

### III.

### SUMMARY OF PROBABLE CAUSE

9. The USSS has interviewed multiple victims of romance or confidence frauds who transferred funds based on fraudulent pretenses directly into the Subject Accounts. Subject Account 1 was first identified as suspicious in November 2023, after a Cathay Bank ("Cathay") investigator flagged suspicious activity in the account, with multiple large deposits within a short time and attempted same day or next day withdrawals. Given the suspicious activity on the account, Cathay contacted USSS for further investigation which revealed additional fraudulent deposits into Subject Accounts 2 and 3.

### IV.

### STATEMENT OF PROBABLE CAUSE

HISTORY OF SUBJECT ACCOUNTS

10. On or about October 30, 2023, Subject Account 1 was opened in the name of Hepburn Trade Incorporated, with an identified address of 437 S. Hill Street, Los Angeles, CA 90013, and Guodong Zhang ("Zhang") identified as the only authorized signer. According to California Secretary of State records, Hepburn Trade Inc. is a California Corporation registered in

August 2023 with a principal address in Los Angeles, CA. Zhang, the Subject Account authorized signer, is listed as the Chief Executive, Chief Financial Officer, and Secretary.

11. On or about August 25, 2023, Subject Account 2 was opened in the name of Octavia Trading Limited, with an identified address of 10 Corporate Park, Suite 330, Irvine, CA 92606, and Longlong Wan ("Wan") identified as the only authorized signer. According to California Secretary of State records, Octavia Trading Limited is a California Corporation registered in May 2023 with a principal address in Irvine, CA. Wan, the Subject Account authorized signer, is listed as the Chief Executive, Chief Financial Officer, and Secretary.

12. On or about March 23, 2023, Subject Account 3 was opened in the name of Sun Yang Trade LLC, with an identified address of 4351 Gannet Circle, Unit #168, Las Vegas, NV 89103, and Dashuai Sun identified as the only authorized signer. According to California Secretary of State records, Sun Yang Trade LLC is an out-of-state Limited Liability Company registered in December 2023 with a principal address in South El Monte, CA.

CONFIDENCE AND ROMANCE SCAM VICTIMS

13. As described in further detail below, fraud victims interviewed by the USSS have related similar stories about having been lured into an online relationship with a person whom

6

they had never met in person. The victims were then induced to transfer funds to a bank account by their online "friend," except the account is controlled by criminals.

14. **Victim G.W.:** In November 2023, I spoke to G.W. of Corpus Christi, TX regarding a $750,000.00 wire transfer sent on November 27, 2023, to Subject Account 1; and a $250,000.00 wire transfer sent on November 21, 2023, to Subject Account 2. In September 2023, G.W. began to communicate with a female who went by the name Oksana Lupulyak ("Lupulyak") on the website LinkedIn. Lupulyak told G.W. she was born in China, now lives in Irvine, CA and is a partial owner of a beauty salon in Los Angeles, CA called Navilla Aesthetic Lounge. Lupulyak also told G.W. she has an uncle named Zhang ("Zhang"), who trades crypto currency options. Lupulyak advised G.W. to invest on a crypto currency platform called Bakktig.com. G.W. would then call Zhang on the communication application WhatsApp and Zhang would advise G.W. how to invest his funds.

15. Starting in September 2023 and ending in November 2023, G.W. made the following wire transfers investments: 1) $233,690.00 to an account in the name of Meiga Trading Limited, at Bank Limited, Hong Kong; 2) $1,000.00 to an account in the name of Chen-Haijian, at Standard Charter Bank, Hong Kong; 3) $65,000.00 to an account in the name of Chen-Haijian, at

7

Standard Charter Bank, Hong Kong; 4) $750,000.00 to Subject Account 1; and 4) $250,000.00 to Subject Account 2.

16. G.W. received the bank wire information via text message from a customer service representative on the Bakktig.com website. G.W. never inquired with a customer service representative of Bakktig.com why his funds were being sent to different bank accounts. In November 2023, G.W. checked his account balance on the Bakktig.com website and learned his account was purportedly now worth $1.2 million. G.W. attempted to withdraw funds from his Bakktig.com account and was told that his withdrawal needed to be approved by a financial committee of Bakktig and the approval can take up to 48 hours. G.W. attempted a second request for withdrawal of funds and was told he must deposit a "risk fund payment" of $252,472.00 or his funds balance would be turned over to a financial industry regulator. At this time G.W. began to suspect he was a victim of a scam and researched the website Bakktig.com. G.W. learned there is a legitimate crypto currency web site called Bakkt.com, and he confirmed with a representative of Bakkt.com that the Bakktig.com site is not part of their business.

17. In November 2023, a Cathay investigator contacted the authorized bank signer for Subject Account 1 to inquire why G.W. sent a $750,000.00 wire transfer to the account. Cathay was provided a purchase contract allegedly describing what G.W. had

purchased. The USSS examined the contract and learned the following information: Contract date 11/26/23; items purchased: 300 bearings NTN, cost $106,875.00; 400 bearings NSK, cost $260,800.00; 300 hod rods crank shift kit, cost $204,000.00; and 250 tapered roller bearings, cost $178,325.00; for a total purchase contract amount of $750,000.00. The contract information is wholly inconsistent with the crypto currency investment that was represented to G.W.

18. Based on my training and experience, I believe G.W. is a victim of a romance and confidence scam and the $750,000.00 wire transferred to Subject Account 1 on November 27, 2023; and the $250,000.00 wire transferred sent to Subject Account 2 on November 21, 2023, represent fraudulent proceeds of such a scam.

19. **Victim G.S.:** In May 2023, I spoke to G.S. of Las Vegas, NV regarding a $50,000.00 wire transfer sent on November 27,2023 to Subject Account 1; and a $30,000.00 wire transfer sent on October 27, 2023, to Subject Account 3. During the summer of 2023, G.S. met a female, who went by the name Alisa, in a crypto currency chat room on the application WhatsApp. G.S. and Alisa developed a quick friendship and communicated on a weekly basis via text over the next several months. Alisa told G.S. she was from Idaho and worked in the software industry. Alisa encouraged G.S. to invest in crypto currency and told her to use the crypto trading platform called AdogeUK.  G.S. decided

9

to invest and would log onto the website of AdogeUK and obtain bank account and routing information of where to send her funds from a customer service representative.

20. From September 2023 to November 2023, G.S. wire transferred the following amounts: 1) On 9/18/23, $72,800.00, to an account number ending in 6834, at International Bank of Chicago; 2) On 10/27/23, $30,000.00 to Subject Account 3; 4) On 10/31/23, $20,000.00, to an account number ending in 9177 at Bank of America; and 5) On 11/27/23, $50,000.00, to Subject Account 1. G.S. has not yet tried to withdraw funds from her AdogeUK account and believes her account balance is composed of crypto currency and is secure in a "trust wallet."

21. Subject Account 1's authorized signer provided Cathay a purchase contract allegedly detailing what G.S. had purchased. The USSS examined the contract and learned the following: Invoice date 11/27/23; Items purchased: 500 fastener kit boards, cost $15,250.00; 200 gold plated sockets, cost $18,000.00; 200 ring pulleys, cost $9,000.00; 500 hand wheels, cost $7,750.00; for a total purchase contract amount of $50,000.00. The contract information is wholly inconsistent with the crypto currency investment that was represented to G.S.

22. Based on my training and experience, I believe G.S. is a victim of a romance and confidence scam and the $30,000.00 wire transferred to Subject Account 3 on October 27, 2023; and

10

the $50,000.00 wire transferred to Subject Account 1 on November 27, 2023, represent fraudulent proceeds of such a scam.

23. **Victim K.T.:** In November 2023, I spoke to victim K.T. of Hampton, VA regarding a $122,000.00 wire transfer sent on November 28, 2023, to Subject Account 1; and a $50,000.00 wire transfer sent on November 09, 2023, to Subject Account 2. In August 2023, K.T. began to communicate on the website Meetup.com with a person who went by the name Nicole Broffer ("Broffer"). Broffer told K.T. she was from Germany, forty-two years old, and worked overseas in the medical manufacturing field. After a few weeks of communicating on Meetup.com, Broffer and K.T. communicated via text on WhatsApp. At first, K.T. considered his relationship to be only a friendship, but later felt the relationship was developing into a romantic relationship. Broffer told K.T. that in December 2023 she would be taking a work trip to the United States and that she would like to meet him. In September 2023, Broffer told K.T. she invested in crypto currency and encouraged K.T. to invest as well. Broffer told K.T. to use the crypto currency website trading platform called Timetrading-wallet.com.

24. From September 2023 to November 2023, K.T. made the following wire transfers: 1) $83,000.00 to an account in the name of AC Holding Limited, N. 3229 Lyford Cay, Nassau, Bahamas, 82720, at Summit National Bank; 2) $63,000.00 wire transfer to

11

an account in the name of Deltec Bank and Trust Limited, N 3229 Lyford Cay, Nassau, Bahamas, 82720, at United Texas Bank; 3) $50,000.00 wire transfer to Subject Account 2; and 4) $122,000.00 wire transfer to Subject Account 1.

25.  K.T. was provided bank account information via text message from a customer service representative on the Timetrading-wallet.com website.  K.T. was also told that after receiving banking information he must wire transfer funds within four hours or contact customer service to obtain new banking account information. K.T. never asked why there was only a four-hour window or why his funds were being sent to different banks and account names. In early November 2023, K.T. checked his account on the Timetrading-wallet.com website and learned his balance was purportedly now worth $809,499.00. K.T. attempted to have some of his account balance transferred to his bank account but was told that he must first pay $122,000.00 to cover capital gain taxes and a service fee for tax preparation. K.T. agreed and sent a $122,000.00 wire transfer to Subject Account 1. A few days after sending the wire transfer, K.T. attempted to withdraw funds but was told he must pay a $200,000.00 security deposit. K.T. did not pay the $200,000.00 and a few days later attempted to log into Timetrading-wallet.com but was no longer able to access the website.

26. Based on my training and experience, I believe K.T. is a victim of a romance and confidence scam and the $122,000.00 wire transferred to Subject Account 1 on November 28, 2023; and the $50,000.00 wire transferred to Subject Account 2 on November 9, 2023, represent fraudulent proceeds of such a scam.

TRACING FRAUD PROCEEDS INTO THE SUBJECT ACCOUNTS

27. From my review of the Subject Account bank statements, the following fraudulent proceeds described above were deposited into the Subject Accounts:

   a. On 11/27/23, a $750,000.00 wire transfer to Subject Account 1; and on 11/21/23, a $250,000.00 wire transfer to Subject Account 2, from victim G.W.;

   b. On 11/27/23, a $50,00.00 wire transfer to Subject Account 1; and on 10/27/23, a $30,000.00 wire transfer to Subject Account 3, from victim G.S.; and

   c. On 11/28/23 a $122,000.00 wire transfer to Subject Account 1; and on 11/09/23, a $50,000.00 wire transfer to Subject Account 2, from victim K.T.

28. In addition, the USSS has identified additional suspicious deposits into the Subject Accounts but has been unsuccessful in contacting and interviewing the individuals associated with the deposits/transfers, who I believe to be victims of this scheme. These other potential victims made approximately $8,367,912.00 in suspicious deposits into the

13

Subject Accounts (the "Additional Deposits"). Of the $8,367,912 in Additional Deposits, approximately $374,912 was deposited into Subject Account 1, approximately $4,514,636 was deposited into Subject Account 2, and approximately $3,478,364 was deposited into Subject Account 3.

29.  The Additional Deposits share similarities with the above-described fraud victim transfers into the Subject Accounts, in that they (1) were made in the same time period as the above-described transfers of fraud proceeds; (2) were made from individuals in locations throughout the United States without the kind of geographic patterns which might be expected from a legitimate business; (3) were made from people who had not previously deposited funds into Subject Accounts; and (4) were often made in large round-dollar amounts, which are inconsistent with normal business transfers (which typically reflect taxes and other costs). Accordingly, and based on my training and experience, I believe the Additional Deposits are also fraud proceeds from victims whose identity the USSS has yet to confirm.

30.  As described above, approximately $922,000 was sent by identified victims to Subject Account 1 and approximately $374,912 was sent in Additional Deposits to Subject Account 1, for a total of $1,296,912, which the government seeks to seize from Subject Account 1.  Approximately $300,000 was sent by

14

identified victims to Subject Account 2 and approximately $4,514,636 was sent in Additional Deposits to Subject Account 2, for a total of $4,814,636, which the government seeks to seize from Subject Account 2.  Approximately $30,000 was sent by identified victims to Subject Account 3 and approximately $3,478,364 was sent in Additional Deposits to Subject Account 3, for a total of $3,508,364, which the government seeks to seize from Subject Account 3.

**V.**

**CONCLUSION**

31.  Based upon the foregoing, there is probable cause to believe that the Subject Funds represent proceeds derived from violations of 18 U.S.C. § 1343 (Wire Fraud), which constitutes "specified unlawful activity" pursuant to 18 U.S.C §§ 1956 (c)(7)(A) and 1961 (1)(B).  Therefore, the Subject Funds are subject to seizure under 18 U.S.C § 981 (b)(2) and forfeiture pursuant to 18 U.S.C § 981 (a)(1)(c).

32.  In addition, there is probable cause to believe that the Subject Funds are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(f) because the funds would, in the event of conviction on the alleged underlying offenses, be subject to forfeiture, and an order under section 21 U.S.C. § 853(e) would not be

sufficient to assure the availability of the property for forfeiture.

33. To the extent that the Subject Funds are not the actual monies traceable to or involved in the illegal activities identified herein, these funds are identical property found in the same account as such property, rendering these funds subject to forfeiture pursuant to 18 U.S.C. § 984.

FRED APODACA
Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone

Fred Apodaca
Special Agent
United States Secret Service

Subscribed and sworn before me
on this _____ day of January 2024

_____
THE HONORABLE MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE